UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SAM BHAMBHANI and<br>MAXIM TESLENKO,<br><br>Defendants | Criminal No.   24cr10270<br><br>Violations:<br><br>Count One: Conspiracy to Violate and Evade Export Controls, Commit Smuggling and to Defraud the United States<br>(18 U.S.C. § 371)<br><br>Count Two: Smuggling Goods from the United States; Aiding and Abetting<br>(18 U.S.C. §§ 554 and 2)<br><br>Forfeiture Allegation:<br>(50 U.S.C.§ 4819(d)(1), 18 U.S.C.<br>§ 981(a)(1)(C) & 28 U.S.C. § 2461(c), 13 U.S.C. § 305(a)(3), 19 U.S.C. § 1595a(d) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1. SAM BHAMBHANI ("BHAMBHANI"), was a resident of North Attleboro, Massachusetts. BHAMBHANI also established KIRKSTALL HOLDINGS ("KIRKSTALL") – a business to assist him in his scheme to sell laser equipment to RUSSIA – outside the United States.

2. MAXIM TESLENKO ("TESLENKO") was a citizen of the Russian Federation. TESLENKO operated various businesses – including OOO LEGRAN, a/k/a LEGRAND, ("LEGRAN"), LANIA TRADE AND INVEST ("LANIA"), and TORVARD OU

1

("TORVARD") – in Russia and elsewhere, and acted as a reseller of laser equipment to the Russian government.

3. COMPANY 1 was a global supplier of laser sources for welding, marking, cutting, deep engraving, and motion systems, with facilities located in Rhode Island and Florida. At all times relevant to this indictment, BHAMBHANI was employed as a salesman by COMPANY 1.

4. ROSATOM was a Russian state corporation headquartered in Moscow, Russia, that specialized in nuclear energy, nuclear non-energy, and high-tech products. ROSATOM oversaw Russia's nuclear weapons complex.

5. The URAL ELECTROMECHANICAL PLANT ("UEMZ") was a subsidiary of ROSATOM, located in Yekaterinburg, Russia, which operated as part of the Russian nuclear energy industry. It was one of two active sites for Russia's production of non-nuclear components for nuclear munitions, and produced a variety of civilian goods, including those applied in nuclear power, energy, and transportation.

6. LEO HILL was a fictious identity and middleman utilized to obtain reseller discounts from COMPANY 1, while invoicing UEMZ for the full price of the laser welding machines.

7. INDIVIDUALS 1 and 2 were located in Russia.

8. INDIVIDUAL 3 was an employee of COMPANY 1, located in the United States.

9. INDIVIDUAL 4 was located in Israel.

10. From at least 2015 until 2021, BHAMBHANI and TESLENKO conspired to

evade U.S. export control laws to send laser welding machines from COMPANY 1 to the UEMZ by falsifying export documents submitted to the U.S. government in order to conceal the fact that UEMZ was the true end user of the machines, in violation of 13 U.S.C. § 305 and 18 U.S.C. § 554.

### Export Documentation

11.  U.S. law requires that exporters file an Electronic Export Information ("EEI") when the value of the commodity as classified under an individual Schedule B number is over $2,500 or if a validated export license is required to export the commodity. *See* 15 C.F.R. Part 30. A license may be required to export an item depending on the technical characteristics of the item, the destination country, the end user, and the end use of the item. See 15 C.F.R. Parts 730-774. The exporter is responsible for preparing the EEI and the carrier files it with U.S. Customs and Border Protection ("CBP") through CBP's Automated Export System ("AES"). The EEI required an exporter to list, among other things, the destination country, the ultimate consignee's name and address, the intermediate consignee's name and address, and a description of the commodity to be exported. The purpose of these requirements is to strengthen the U.S. government's ability to prevent the export of certain items to unauthorized destinations and end users. *See* 15 C.F.R. § 30.1(b).

12.  Any person who knowingly submits false or misleading export information through the AES is subject to criminal penalties under Title 13, United States Code, Section 305. In addition, any person who fraudulently or knowingly exports or sends from the United States

any merchandise, article, or object contrary to the laws or regulations of the United States is also subject to criminal penalties under Title 18, United States Code, Section 554.

## Overview of the Conspiracy

13. On or about January 12, 2015, BHAMBHANI emailed TESLENKO and INDIVIDUAL 1 from his COMPANY 1 email account. The email attached a letter with a seal of COMPANY 1 that authorized "Lania Invest and Trade to sell [COMPANY 1's] products in Russia." The letter specifically stated that "Lania Trade and Invest (d.b.a. Kirkstall Holdings) is an authorized agent of [COMPANY 1]. . . for Russia," and was "authorized to sell, trade, and perform all transactions related to [COMPANY 1's] equipment, consumable parts and service parts in Russia." However, BHAMBHANI was not authorized to write such a letter.

14. Subsequently, on or about February 15, 2015, COMPANY 1 exported laser welding machines from Rhode Island, through New York, to Russia. The export documentation falsely listed the "ultimate consignee" as Polyarisy Ltd, Ambramcevskaya Str 4, Korp 2, Moscow, 127576, RU, when in fact the laser welding machines were destined for UEMZ. Later, on or about March 5, 2015, TESLENKO emailed BHAMBHANI and told him that his address was 125367, Polesskiy pr. 16, Building 1 Moscow Russia.

15. In February 2015, around the time of the shipment, BHAMBHANI emailed INDIVIDUAL 1, falsely stating that he was "the head of [COMPANY 1's] business" and informed him that "I have given you total exclusivity and you have to trust me that I don't have the intention if working with anyone else. Only I can authorize which agent sells in which countries and we normally don't sign any contracts as our handshake and agreement is more

4

important." BHAMBHANI was not the head of COMPANY 1's business and was not authorized to grant reseller status.

16. On or about April 17, 2015, INDIVIDUAL 2 – an employee of UEMZ and ROSATOM – emailed COMPANY 1 seeking the identity of COMPANY 1's Russian reseller. BHAMBHANI replied, copying TESLENKO, and stated that TESLENKO was COMPANY 1's Russian re-seller. TESLENKO then informed BHAMBHANI that UEMZ / ROSATOM had been the customer for the laser welding machines previously shipped in February 2015.

17. On or about November 25, 2015, TESLENKO emailed BHAMBHANI and informed him that TESLENKO's customers were "government customers," and that he wanted BHAMBHANI to continue producing at least six machines for them. On or about July 1, 2016, TESLENKO emailed BHAMBHANI and told him that the final destination was "125367, Moscow, Polesskiy proezd, 16 build 1 Notify Party: "SIA Estrista." Subsequently, on or about July 19, 2016, COMPANY 1 exported six laser welding machines from the United States. The export documentation falsely listed "SIA Estrista, Polesskiy Proezd 16, Moscow, RU" as the "Ultimate Consignee," when in fact as both TESLENKO and BHAMBHANI then knew the laser welding machines were intended for UEMZ.

18. A document belonging to TESLENKO, dated or about March 30, 2017, indicated that LEGRAN and UEMZ had contracted to transfer ownership of six laser workstations made by COMPANY 1 to UEMZ – specifically, to the Rosatom Department of the Industry of Nuclear Munitions (i.e., the Russian nuclear weapons program). Two days later, on April 1, 2017, COMPANY 1 exported six laser welding machines from the United States. The export

documentation falsely listed "ABX SIA, Urikstes 4, Riga, 1005, LV" as the "Ultimate Consignee." In reality, the laser welding machines were intended for UEMZ.

19. On or about May 3, 2018, BHAMBHANI emailed TESLENKO, and the two discussed the difficulty in making shipments to TESLENKO's customer due to the U.S. governments export controls, including military end use requirements. BHAMBHANI initially said:

> I have tried to contact this company many times for ou and this machine comes under export control product. The government has strict export controls and they need complete information of the end user along with details of what they will use the machine for before they will even give priecs. I told that I will try to get this information. Approximately, this machine is $1.5 mil.
>
> Please let me know if you can get all the details from customer and then we can see. Sorry I wish I was giving you better news.

TESLENKO replied:

> Thanks for your response.
> Of course we could give the customers details.
> But the main question is: could they sell it to Russia to nonmilitary end using or not?
> Unfortunately, now its not so good relationships between our counties. That's why we afraid.
> What do you think about it.

BHAMBHANI replied:

> Max, they can sell to Russia, but really need to know the specific application and have to qualify the industry of customer and what exact parts they will be making?

20. On or about January 29, 2020, BHAMBHANI caused COMPANY 1 to export certain parts of a laser welding machine. The export documentation falsely listed LANIA,

6

located in the British Virgin Islands, as the "Ultimate Consignee," when in fact the parts were intended for UEMZ.

21. In or around March and April 2020, TESLENKO and BHAMBHANI communicated about purchasing two additional laser welding machines. BHAMBHANI informed TESLENKO that there were many export controls, "but we will find a way." In September 2020, BHAMBHANI also informed TESLENKO that they would have to find a way around U.S. export controls to make the sale possible: "Also, we will have to figure out the shipment and invoicing as now there are too many controls put on export to Russia. Politics! Anyways will write as I have more info and we'll figure it out." Subsequently, in October 2020, BHAMBHANI forwarded TESLENKO an inquiry he had received and stated that he believed the inquiry was for UEMZ. TESLENKO replied "you are right about the customer" and indicated that UEMZ still intended to purchase two laser welding machines.

22. In December 2020, BHAMBHANI asked TESLENKO if he had "another company account anywhere in Europe, USA, or Canada that we can use for these orders?" Three days later, TESLENKO sent him TORVARD, based in Estonia, as a new company name. Later, in May 2021, BHAMBHANI informed TESLENKO that "we have to take [sic] about exporting to Russia. Too many controls by export department and they are checking everything." In July 2021, TESLENKO and BHAMBHANI again agreed to utilize TORVARD for the shipment. BHAMBHANI also asked TESLENKO to send the purchase money from TORVARD as well, because "[t]hen no one will question anything." When TESLENKO responded that this would be difficult, BHAMBHANI instructed him to place the order for TORVARD, and said that

7

COMPANY 1 would ship to TORVARD, but that TESLENKO should not "say anything about. . . Russia . . . . Hope no one questions it."

23.     In or around August and September 2021, BHAMBHANI caused COMPANY 1 to provide information to the freight forwarder falsely indicating that the Ultimate Consignee for a new laser welding machine was TORVARD. The information provided by COMPANY 1 to the freight forwarder was provided by INDIVIDUAL 3, who had received the information from BHAMBHANI. However, shortly before the export was made, INDIVIDUAL 4 instructed the freight forwarder to indicate that the "Ultimate Consignee" was an entity located at 16S1, Polesskiy Driveway, Of .222, Moscow Russia, 12536. In reality, the Ultimate Consignee for the laser welding machine was UEMZ. Subsequently, on or about September 11, 2021, BHAMBHANI caused COMPANY 1 to export a laser welding machine to UEMZ.

<u>Objects and Purpose of the Conspiracy</u>

24.     The objects of the conspiracy were (a) to fraudulently and knowingly export laser welding machines from COMPANY 1 in the United States to UEMZ in Russia, contrary to the laws and regulations of the United States, by falsely stating or causing to be falsely stated on export documentation submitted to the U.S. government that an entity other than UEMZ was the Ultimate Consignee for certain laser welding machines, when in fact those laser welding machines were being exported to UEMZ, in violation of Title 13, United States Code, Section 305, and Title 18, United States Code Sections 554, and with the intent to evade U.S. export control laws, in violation of Title 50, United States Code, Section 4819; and (b) to interfere with and obstruct, through deceitful and dishonest means, the lawful functions of the U.S. Department

of Commerce, an agency of the United States, in the enforcement of export controls and regulations by making and causing such false statements. The principal purpose of the conspiracy was to make money via the sale of the laser welding machines to UEMZ.

## Manner and Means of the Conspiracy

25. Among the manner and means by which BHAMBHANI, TESLENKO, and coconspirators known and unknown to the Grand Jury carried out the conspiracy were the following:

   a. establishing shell companies, including LEGRAN, LANIA, TORVARD, and KIRKSTALL, and others, in order to mask the export of the laser welding machines to UEMZ;

   b. communicating regarding the scheme from Massachusetts, Rhode Island, and elsewhere, using e-mail and the encrypted messaging application WhatsApp;

   c. establishing a fictious identity and middleman, known as LEO HILL, to obtain reseller discounts from COMPANY 1; and

   d. causing the making of false statements on export documentation submitted to the U.S. government when that documentation failed to list UEMZ as the Ultimate Consignee, when UEMZ was, in fact, the Ultimate Consignee.

Overt Acts in Furtherance of the Conspiracy

26. From in or about 2014 through in or about 2021, BHAMBHANI and TESLENKO, and coconspirators known and unknown to the Grand Jury, committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

  a. On or about February 15, 2015, BHAMBHANI and TESLENKO caused export documentation to falsely list the "Ultimate Consignee" as Polyarisy Ltd, Ambramcevskaya Str 4, Korp 2, Moscow, 127576, RU, when in fact BHAMBHANI and TESLENKO knew that the "Ultimate Consignee" was UEMZ.

  b. On or about July 19, 2016, BHAMBHANI and TESLENKO caused export documentation to falsely list "SIA Estrista, Polesskiy Proezd 16, Moscow, RU" as the "Ultimate Consignee," when in fact TESLENKO and BHAMBHANI knew that "Ultimate Consignee" was UEMZ.

  c. On or about April 1, 2017, BHAMBHANI and TESLENKO caused export documentation to falsely list "ABX SIA, Urikstes 4, Riga, 1005, LV" as the "Ultimate Consignee," when in fact BHAMBHANI and TESLENKO knew that the "Ultimate Consignee" was UEMZ.

  d. On or about January 29, 2020, BHAMBHANI and TESLENKO caused export documentation to falsely list LANIA in the British Virgin Islands

as the "Ultimate Consignee," when in fact BHAMBHANI and TESLENKO knew that the "Ultimate Consignee" was UEMZ.

e. On or about May 11, 2021, BHAMBHANI emailed TESLENKO a sales quote for the purchase of a laser welding machine.

f. On or about September 11, 2021, BHAMBHANI and TESLENKO caused the export of a laser welding machine from COMPANY 1 in the United States to UEMZ in Russia, knowing and intending the export documentation to falsely state that the "Ultimate Consignee" was an entity other than UEMZ.

## COUNT ONE
### Conspiracy to Violate and Evade Export Controls, Commit Smuggling, and to Defraud the United States
### (18 U.S.C. § 371)

The Grand Jury charges:

27. The Grand Jury re-alleges and incorporates by reference paragraphs 1-26 of this Indictment.

28. From in or about 2015 through in or about 2021, in the District of Massachusetts, District of Rhode Island, the Russian Federation, and elsewhere, the defendants,

SAM BHAMBHANI, and
MAXIM TESLENKO,

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury to commit an offense against the United States, to wit, 18 U.S.C. § 554(a), that is, to fraudulently and knowingly export and send laser welding machines from the United States contrary to Title 13, United States Code, Section 305 and 15 C.F.R. Part 30, a law and regulation of the United States, and facilitate the transportation, concealment, and sale of laser welding machines prior to exportation, knowing the same to be intended for exportation contrary to Title 13, United States Code, Section 305 and 15 C.F.R. Part 30; Title 50, United States Code, Section 4819, that is, to willfully export laser welding machines from the United States with the intent to evade the Export Administration Regulations, 15 C.F.R. Parts 730-774; and 15 CF.R. Part 30, and to defraud the United States by intending to interfere with and obstruct, through deceitful and dishonest means, the lawful functions of the U.S. Department of Commerce in the enforcement of export controls and regulations,

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### Smuggling Goods from the United States; Aiding and Abetting
### (18 U.S.C. § 554(a) and 2)

The Grand Jury further charges:

29. The Grand Jury re-alleges and incorporates by reference paragraphs 1-28 of this Indictment.

30. In or around September 2021, in the District of Massachusetts, the District of Rhode Island, the Russian Federation, and elsewhere, the defendants,

SAM BHAMBHANI and
MAXIM TESLENKO,

did fraudulently and knowingly export and send laser welding machines from the United States and attempted to export and send laser welding machines from the United States to a place outside thereof, that is, Russia, contrary to Title 13, United States Code, Section 305, and 15 C.F.R. Part 30, laws and regulations of the United States, and did knowingly receive, conceal and facilitate the transportation, concealment, and sale of laser welding machines prior to exportation, knowing the same to be intended for exportation contrary to Title 13, United States Code, Section 305 and 15 C.F.R Part 30,

All in violation of Title 18, United States Code, Sections 554(a) and 2.

FORFEITURE ALLEGATION
(50 U.S.C. § 4819(d)(1), 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c),
13 U.S.C. § 305(a)(3), 19 U.S.C. § 1595a(d))

31.     Upon conviction of one or more of the offenses set forth in Counts One and Two, the defendants,

SAM BHAMBHANI a/k/a LEO HILL, and
MAXIM TESLENKO,

shall forfeit to the United States,

    a.  pursuant to Title 50, United States Code, Section 4819(d)(1), any property used or intended to be used, in any manner, to commit or facilitate the violation; constituting or traceable to the gross proceeds taken, obtained, or retained, in connection with or as a result of the violation; or constituting an item or technology that is exported or intended to be exported in violation of Title 50, United States Code, Section 4819(a)(2)(A);

    b.  pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offense;

    c.  pursuant to Title 13, United States Code, Section 305(a)(3), any interest in, security of, claim against, or property or contractual rights of any kind in the goods or tangible items that were the subject of the violation; any interest in, security of, claim against, or property or contractual rights of any kind in tangible property that was used in the export or attempt to export

that was the subject of the violation; and any property constituting, or derived from, any proceeds obtained directly or indirectly as a result of the violation; and

    d.    pursuant to Title 19, United States Code, Section 1595a(d), any merchandise exported or sent from the United States or attempted to be exported or sent from the United States contrary to law, or the proceeds or value thereof, and any property used to facilitate the exporting or sending of such merchandise, the attempted exporting or sending of such merchandise, or the receipt, purchase, transportation, concealment, or sale of such merchandise prior to exportation.

32.    If any property described in Paragraph 31 above, as being forfeitable pursuant to Title 50, United States Code, Section 4819(d)(1), Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), Title 13, United States Code, Section 305(a)(3), or Title 19, United States Code, Section 1595a(d), as a result of any act or omission of the defendants --

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 31 above.

All pursuant to Title 50, United States Code, Section 4819(d)(1), Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), Title 13, United States Code, Section 305(a)(3), and Title 19, United States Code, Section 1595a(d).

A TRUE BILL

_____
FOREPERSON

_____
TIMOTHY H. KISTNER
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: SEPTEMBER 5, 2024
Returned into the District Court by the Grand Jurors and filed.

/s/ Leonardo T. Vieira, 2:59pm
_____
DEPUTY CLERK